UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ANGELA GUSTUS,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )
                                  )     No.:    1:16-CV-352-TAV-CHS
NANCY A. BERRYHILL,               )
Acting Commissioner of Social Security,   )
                                  )
            Defendant.            )

**MEMORANDUM OPINION**

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner's final decision denying Angel Gustus's ("Plaintiff") claim for Supplemental Security Income ("SSI"), as provided by the Social Security Act. The matter is currently before the Court on Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] and the Commissioner's Motion for Summary Judgment [Doc. 14].

The Commissioner determined that Plaintiff is not disabled under the Act. Finding that such determination is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), for the reasons that follow, the Court will deny Plaintiff's motion [Doc. 12], grant the Commissioner's motion [Doc. 14], and affirm the Commissioner's decision.

I.    **Background**

On September 24, 2013, Plaintiff protectively filed for Disability Insurance Benefits ("DIB") and SSI[1] under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. § 401

---

[1] Plaintiff's date last insured was September 30, 2008. During the hearing before the ALJ, Plaintiff elected to amend her alleged onset date to September 24, 2013, thus abandoning her DIB claim [Tr. 28–30, 80].

*et seq.* and 42 U.S.C. § 1381 *et seq.*, based on chronic depression, neck problems, back spasms, asthma, bronchitis, and hypertension[2] [Tr. 226–34, 251].[3]  Plaintiff's claim was denied both initially and on reconsideration [*Id.* at 123–24, 154–61, 164–69].  On November 12, 2015, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Wesley Kliner [*Id.* at 22–76].  On January 11, 2016, the ALJ issued a decision, finding that Plaintiff was "not disabled," as defined in the applicable sections of the Act [*Id.* at 80–88].  On August 15, 2016, the Appeals Council denied Plaintiff's request for review [*Id.* at 1–3].  Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the Commissioner's final decision subject to judicial review.  *See* 42 U.S.C. § 405(g).

Plaintiff is currently a forty-eight-year-old individual who performed past relevant work as a bottling packer, fast food cook, fast food cashier, and de-boner and washer in a chicken evisceration plant [Tr. 38, 40, 43, 68–69, 258].  At the time of her amended alleged onset date of September 24, 2013, Plaintiff was forty-four years old [*Id.* at 230].

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record.  Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

After considering the entire record, the ALJ made the following findings:

1.  The claimant met the insured status requirements of the Social Security Act through September 30, 2008.

---

[2] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Judgment on the Pleadings [Doc. 12].

[3] An electronic copy of the administrative record is docketed at Doc. 8.

2

2. The claimant has not engaged in substantial gainful activity since September 24, 2013, the amended alleged onset date (20 C.F.R. 416.971, *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, affective disorder, anxiety disorder, conduct disorder, personality disorder, and substance abuse disorder (20 C.F.R. 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b), except that she is to avoid more than frequent balancing, kneeling, crouching, or crawling; she is to avoid more than occasional stooping or climbing of stairs, ramps, ladders, or scaffolds; she is to avoid all exposure to dust, odors, fumes, or other pulmonary irritants; she is restricted to simple, routine tasks, making simple work-related decisions, with no more than occasional interaction with coworkers or supervisors and no interaction with the general public; there are to be few changes in the work setting and they must be well-planned and gradually implemented over an extended period of time, with extra supervision; she is expected to be off-task less than 5% of the workday, in addition to normal breaks.

6. The claimant is capable of performing her past relevant work as a packer or chicken de-boner. These jobs did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 24, 2013, the amended alleged onset date, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

[Tr. 82–88].

## II.    Analysis

The determination of disability under the Act is an administrative decision.   To establish disability under the Social Security Act, a claimant must establish that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.   42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).   The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 416.920.   The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity, she is not disabled; (2) if the claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled.  *Id.*  If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step.  20 C.F.R. § 416.920; *Skinner v. Sec'y Health & Human Servs.*, 902 F.2d 447, 449–50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy that she can perform, considering her age, education, and work experience. *Richardson v. Sec'y Health and Human Servs*., 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

4

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y Health & Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The Court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). For purposes of substantial evidence review, however, the Court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the Court is not obligated to scour the record for errors not identified by the claimant. *See Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived). Moreover, "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed

5

argumentation, are deemed waived.'" *Kennedy v. Comm'r Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

Plaintiff presents three issues for review: (1) whether "Plaintiff is disabled because she is unable to do any work on a regular, sustained basis due to her physical and mental impairments"; (2) whether "the ALJ improperly impugned Plaintiff's credibility and used this as the primary if not exclusive reason for finding [Plaintiff] not disabled"; and (3) whether "the ALJ improperly played doctor and substituted his hunch or intuition for the diagnosis of . . . examining medical professionals" [Doc. 13 pp. 7–8].

### A. Disability Due to Impairments

Plaintiff's first stated issue is whether she "is disabled because she is unable to do any work on a regular, sustained basis due to her physical and mental impairments" [*Id.* at 8–10]. Having reviewed Plaintiff's argument on this issue, the Court finds that it begs the ultimate question and is essentially duplicative of Plaintiff's other arguments. Plaintiff posits that she is disabled because she is unable to work. Whether Plaintiff is disabled was the ultimate question before the ALJ. In raising this issue, however, Plaintiff does not identify any specific error in the ALJ's decision. Plaintiff only argues that two treating physicians (Dr. Karen Moyer and Dr. Stephen Spalding) and two consultative examiners (Dr. Raymond Azbell and Dr. Dee Langford, Ed.D.) opined that she "has restrictions and limitations which would preclude all competitive employment from both a mental and physical standpoint" [*Id.* at 9]. This is also the substance of Plaintiff's third issue, and the Court will address the weight that the ALJ gave to each of the medical opinions in detail below. The Court concludes, however, that Plaintiff has not raised an independent basis for remand with her first issue.

6

**B.     Credibility Assessment**

Plaintiff next argues that "the ALJ improperly impugned [her] credibility and used this as the primary if not exclusive reason for finding [her] not disabled" [*Id.* at 10].

A claimant's statement that she is experiencing disabling pain or other subjective symptoms will not, taken alone, establish that she is disabled.   20 C.F.R. § 416.929(a). Evaluating subjective complaints requires a two-step analysis, known in this circuit as the *Duncan* test.   *See Duncan v. Sec'y Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Under the *Duncan* test,

> First, we examine whether there is objective medical evidence of an underlying medical condition.   [Second], [i]f there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky*, 35 F.3d at 1038–39 (quoting *Duncan*, 801 F.2d at 853).   Objective medical evidence constitutes medical signs and/or laboratory findings, as defined in 20 C.F.R. § 416.928(b)–(c).[4]   The *Duncan* test does not, however, "require objective evidence of the pain itself." *Felisky*, 35 F.3d at 1039 (internal citation omitted).   The Commissioner may examine a number of factors other than medical signs and laboratory findings in determining the severity of the

---

[4] The Social Security Administration revised its rules regarding the evaluation of medical evidence.   82 Fed. Reg. 5844-01, 2017 WL 168819.   The revised regulations went into effect on March 27, 2017, *id.*, and are not applicable to this case.   *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law.   Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

alleged pain or other subjective symptoms once the underlying impairment is established by objective medical evidence. As the Social Security regulations explain,

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. . . .

20 C.F.R. § 416.929(c)(1); *see also Felisky*, 35 F.3d at 1037–40.

In addition to the objective medical evidence, the claimant's own statements regarding the persistence, intensity, and limiting effects of her symptoms will be considered; however, in considering those statements, the claimant's credibility will be evaluated. *See id.* at 1036–37. It is the province of the Commissioner, not the reviewing court, to make credibility findings, but the Commissioner must clearly state the reasons if he finds the claimant to be lacking in credibility. *Id.* at 1036; *see also Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). The ALJ's credibility findings "are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

The SSA provides a checklist of other factors that the ALJ must consider when assessing the severity of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pain or other symptoms; (5) treatment other than medication received for relief of pain or other symptoms; and (6) any other measures used to relieve the pain or other symptoms (such as lying down or standing for

8

fifteen to twenty minutes every hour). 20 C.F.R. § 416.929(c)(3); *see also Felisky*, 35 F.3d at 1037–38 (discussing Social Security Administration regulation pertaining to the evaluation of subjective complaints of symptoms such as pain).

Additionally, Social Security Ruling 96-7p[5] emphasizes that credibility determinations must find support in the record and not be based upon the ALJ's "intangible or intuitive notion[s]." 1996 WL 374186, at *4. In assessing the claimant's credibility, the ALJ must consider the record as a whole, including the claimant's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id*. at *5. Consistency between the claimant's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). The ALJ must explain the credibility determination such that both the claimant and subsequent reviewers will know the weight given to the claimant's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ discussed a number of factors in discounting Plaintiff's claims of disabling symptoms [Tr. 83–87]. First, the ALJ considered Plaintiff's course of treatment [*Id.*]. *See* 20 C.F.R. § 416.929(c)(3)(v) (providing that the SSA will consider a claimant's course of treatment when evaluating symptoms). Regarding Plaintiff's mental impairments, the ALJ found that she had a "minimal treatment record" and "did not actively pursue treatment, with

---

[5] SSR 96-7p has been superseded by SSR 16-3p, which eliminates the use of the term "credibility" from SSA policy, because the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p became effective on March 28, 2016 (*see* 2016 WL 1237954), so it is not applicable to the ALJ's decision in this case.

9

multiple no-shows or cancellations" [*Id.* at 85]. Plaintiff contends that this finding is in error and argues that she did pursue treatment [Doc. 13 p. 13]. A review of the record shows that substantial evidence supports the ALJ's findings. The ALJ acknowledged that Plaintiff sought mental health treatment at times, including from Volunteer Behavioral Health, Mental Health Cooperative, and Homeless Healthcare [Tr. 84–85, 415–64, 483–96, 508–41]. The ALJ also noted, however, that she was discharged from treatment with Volunteer in November 2013, after months of failing to keep scheduled appointments [*Id.* at 83, 485–94].

The ALJ observed that, rather than pursue mental health treatment, Plaintiff "apparently preferred to calm her nerves with marijuana" [*Id.* at 85]. Plaintiff contends in her brief that this statement is untrue, or at least that her latest instance of polysubstance abuse was in late 2013 [Doc. 13 p. 14; Tr. 479]. As noted by the ALJ, however, during an October 2014, mental health intake assessment, Plaintiff specifically reported that she used marijuana "to calm the anxiety and paranoia" [Tr. 508]. Thus, the Court discerns no error with the ALJ's reference to Plaintiff's admitted marijuana use during the relevant period of disability.

The ALJ also considered the efficacy of medication, noting that, although Plaintiff reported hearing voices since childhood, she admitted that medication had a calming effect [*Id.* at 46–48, 86]. Dr. Langford opined that Plaintiff did not appear to experience any hallucinations and showed no evidence of responding to internal stimuli [*Id.* at 481]. Impairments that are "amenable to treatment" are not disabling. *Gant v. Comm'r Soc. Sec.*, 372 F. App'x 582, 585–86 (6th Cir. 2010) (citing 20 C.F.R. § 404.1529(c)); *see also Houston v. Sec'y Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

Regarding Plaintiff's complaints of physical pain, the ALJ found that, although Plaintiff testified that her left knee "go[es] out" on her, "the record contained few mentions of knee pain and no indication of any associated medically determinable impairment" [Tr. 48–49, 86]. Treatment notes from Dr. Moyer's office generally indicated normal physical examinations, with findings of good ranges of motion and, at most, mild tenderness to palpation [*Id.* at 513–22, 529–34, 537].

The ALJ also considered Plaintiff's daily activities, noting that she reported to Dr. Langford that she could prepare simple meals and had social support from friends [*Id.* at 86, 480]. The ALJ also considered a June 2014, treatment note, in which Plaintiff reported that she was earning extra money by cleaning apartments in her building [*Id.* at 86, 535]. This suggested to the ALJ that Plaintiff's ability to stand and lift were more extensive than she had alleged [*Id.* at 86]. Even part-time work may call into doubt a claimant's complaints of disabling symptoms. *See* 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Plaintiff seems to argue that the ALJ erred in considering this part-time work in his overall assessment [Doc. 13 p. 12]. She notes that the medical entry referred to by the ALJ reads as follows: "[Plaintiff] recently moved into a second-floor [apartment] at Patten Towers and has arranged [with management] to clean other clients' apartments for $40/wk per [apartment]" [*Id.*; Tr. 535]. Plaintiff contends that "[t]he fact that [she] may have 'arranged' to do this does not, of course, mean that she actually consummated the arrangement" [Doc. 13

11

p. 12]. The Court finds this argument to be unpersuasive and concludes that the ALJ drew a reasonable inference from the evidence before him.

As detailed above, the ALJ evaluated several of the appropriate regulatory factors and determined that Plaintiff's subjective complaints of symptoms were not fully credible. The Court concludes, therefore, that the ALJ properly weighed the evidence in the record and did not err in assessing the credibility of Plaintiff's statements. The ALJ's assessment is supported by substantial evidence and complies with *Duncan*, 20 C.F.R. § 416.929, and SSR 96-7p.

### C. Medical Opinions

Plaintiff next argues that the ALJ erred in his assessment of several doctors' medical opinions as to her physical and mental functional limitations [Doc. 13 p. 15]. She further argues that, by not assigning controlling weight to any of these doctors' opinions, "the ALJ improperly played doctor and substituted his hunch or intuition" for theirs [*Id.*].

The Regulations require an ALJ to "evaluate every medical opinion" regardless of its source. 20 C.F.R. § 416.927(c). Every medical opinion is not treated equally, however, and the Regulations describe three classifications for acceptable medical opinions: (1) non-examining sources; (2) non-treating sources; and (3) treating sources. A non-examining source is "a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case." 20 C.F.R. § 416.902. A non-treating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id.* Finally, the Regulations define a "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source

who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902; *accord Gayheart v. Comm'r Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).

If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to give the opinion upon consideration of the following factors: "the length, frequency, nature, and extent of the treatment relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)–(6)). If the ALJ does not give a treating source's opinion controlling weight, he must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted). A failure to give "good reasons," or a failure to determine the degree of deference owed to a non-controlling treating source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record," and requires remand. *Friend v. Comm'r Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (quoting *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). The treating-source

13

rule is not, however, "a procrustean bed, requiring an arbitrary conformity at all times." *Friend*, 375 F. App'x at 551. The ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

An ALJ may afford weight to a non-treating or non-examining source, "but only if a treating-source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376. When there is not a treating source opinion that is deemed controlling, an ALJ must weigh a medical opinion offered by a non-treating source based on factors such as the nature of the treatment relationship, the frequency of examination, the specialization of the medical source, and the consistency and supportability of the opinion. *See* 20 C.F.R. § 416.927(c).

### 1.    Dr. Moyer

Dr. Karen Moyer served as Plaintiff's treating physician at Homeless Health Care and the Chattanooga Hamilton County Health Department. Plaintiff's medical records from those institutions cover a treatment period from approximately March 2007, to April 2015 [Tr. 326–74, 512–41].

On April 28, 2015, Dr. Moyer completed a medical opinion form, in which she opined that Plaintiff suffered from pain in her low back, left hip, and left knee [*Id.* at 503]. Dr. Moyer opined that Plaintiff could sit for seven hours total and between five and six hours at a time, stand or walk seven hours total and between five and six hours at a time, lift/carry up to five pounds "frequently" (defined as "2/3 of workday"), lift/carry up to ten pounds "occasionally" (defined as "1/3 of workday"), and lift/carry between eleven and twenty-five pounds "infrequently" (defined as "very few times a day") [*Id.*]. The ALJ gave Dr. Moyer's opinion "great, but not controlling weight," explaining his decision as follows:

14

Karen Moyer, M.D. completed a questionnaire in April 2015, in which she described a narrow range of light work to which the claimant was reportedly restricted, due to lower back, left hip, and left knee pain. Dr. Moyer indicated, however, that the claimant had good range of motion in the back, hip, and knee, with only mild tenderness at the hip. She mentioned that bed rest was necessary about three and one-half hours per day, "as stated by the patient." She further opined that the claimant's pain or fatigue would interfere with her ability to work full-time, but that she would not be absent more than four days per month . . . . I have given this opinion great, but not controlling weight. Dr. Moyer's opinion acknowledged that it was based at least in part on the claimant's subjective allegations (i.e., the need for bed rest). Furthermore, there were obvious inconsistencies in the opinion. For example, Dr. Moyer stated that the claimant could sit or stand or walk for five to six hours at a time, yet she reportedly needed 15 to 20 minutes of rest every hour or two.

[*Id.* at 87].

After reviewing the record, the Court concludes that the ALJ provided good reasons for not giving controlling weight to Dr. Moyer's medical opinion. Although the ALJ did not specify whether he found Dr. Moyer to be a treating source, the Court concludes that the ALJ appropriately applied the treating source rule. First, the Court notes that Dr. Moyer's opinion regarding Plaintiff's functional ability to sit, stand, walk, and lift/carry is consistent with a range of light exertional work. The Regulations indicate that light work involves lifting no more than twenty pounds at a time, lifting or carrying up to ten pounds for one-third to two-thirds of the time, and standing and/or walking, off and on, for a total of about six hours. *See* 20 C.F.R. § 416.967(b); Soc. Sec. Rul. 83-10, 1983 WL 31251. Thus, in keeping with the ALJ's decision to afford Dr. Moyer's opinion great weight, the ALJ's RFC assessment is, in fact, consistent with Dr. Moyer's opinion as to these limitations.

However, as the ALJ explained, Dr. Moyer also assessed additional limitations inconsistent with the above findings. Specifically, Dr. Moyer indicated that Plaintiff would need fifteen to twenty minutes of rest every one to two hours or, in other words, between 60

15

and 160 minutes of rest every day [Tr. 503–04]. Dr. Moyer also indicated that Plaintiff would require bed rest during a normal workday for "'3.5 hours' as stated by [Plaintiff]" [*Id.* at 503]. The ALJ determined that Dr. Moyer's opinion regarding bed rest was unsupported and inconsistent with other statements and discounted her opinion on that basis [*Id.* at 87]. As the ALJ explained, Dr. Moyer specifically acknowledged that she based the restriction to 3.5 hours of bed rest on Plaintiff's subjective reports [*Id.* at 87, 503], and an ALJ may give less weight to an opinion that is based on the claimant's self-reported symptoms. *See Griffith v. Comm'r Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) ("[T]he ALJ is not required to simply accept the testimony of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence." (citing 20 C.F.R. § 416.927(b); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2014) (declining to credit a doctor's opinion that was only supported by the plaintiff's self-reports of symptoms)).

Futhermore, the ALJ found additional inconsistencies within Dr. Moyer's opinion [Tr. 87], and internal inconsistencies may reasonably erode the reliability of a medical opinion. *See Vorholt v. Comm'r Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) (noting that an opinion's internal inconsistencies constituted "an independent reason for granting it little weight"). The ALJ found that Dr. Moyer's statement that Plaintiff could sit or stand or walk for five to six hours at one time was inconsistent with her opinion that Plaintiff would need fifteen to twenty minutes of rest every hour or two [Tr. 87, 503–04]. Additionally, although Dr. Moyer placed significant limitations on Plaintiff due to low back, left hip, and left knee

pain, the ALJ noted that Dr. Moyer had observed that Plaintiff exhibited good range of motion in the back, hip, and knee, with only mild tenderness at the hip [*Id.* at 87, 503].

Based on the foregoing, the Court finds that the ALJ did not err in concluding that Dr. Moyer's opinion was not entitled to controlling weight because it was inconsistent with the medical evidence of record. The Court finds that the ALJ properly weighed the applicable statutory factors when determining the weight to give Dr. Moyer's opinion and gave good reasons to support the decision. Accordingly, the Court concludes that the ALJ did not err in his consideration of Dr. Moyer's opinion.

### 2. Dr. Spalding

On April 13, 2015, Dr. Stephen Spalding wrote a note addressed "To Whom it may Concern," in which he indicated that Plaintiff was "currently in services at Mental Health Cooperative, Inc." and was "actively engaged in treatment and . . . unable to participate in the workplace" [*Id.* at 502]. The ALJ considered this note but afforded it "very little weight," finding it to be a "conclusory opinion, which provided no examples, no reference to the medical evidence, and no rationale or explanation" [*Id.* at 86–87].

The record regarding Plaintiff's treatment with Dr. Spalding is sparse and appears incomplete [*Id.* at 507–11]. The record contains only Plaintiff's October 10, 2014, intake assessment with Mental Health Cooperative, in which she was diagnosed with "other psychoactive substance dependence, uncomplicated," "schizoaffective disorder, bipolar type," and "schizoaffective disorder, unspecified" [*Id.* at 510]. It appears that Plaintiff was reassessed on October 27, 2014, and on January 20, 2015, at which point she was diagnosed with "paranoid schizophrenia"; however, those treatment notes are not in the record [*Id.*].

17

From this record, it is not entirely clear whether Dr. Spalding is a treating source, and the ALJ did not specify whether he considered him a treating source. It is apparent from the ALJ's opinion, however, that he found Dr. Spalding's opinion not well supported and not entitled to controlling weight. As the ALJ noted, Dr. Spalding's opinion did not refer to the medical evidence or provide any rationale or explanation. Although Dr. Spalding made the conclusory statement that Plaintiff was unable to work, he did not provide a specific assessment of Plaintiff's functional limitations. These problems with Dr. Spalding's opinion are compounded by the lack of treatment notes in the record provided to the Court. Based on these reasons, the Court concludes that the ALJ did not err in assigning Dr. Spalding's opinion very little weight.

### 3.     Dr. Azbell

Plaintiff saw Dr. Raymond Azbell for a consultative physical examination in October 2013 [*Id.* at 87, 465–68]. Upon examination, Dr. Azbell anticipated that Plaintiff could "possibly lift up to 10 pounds occasionally with the right hand but not with the left" and that she could not "carry even 10 pounds occasionally with either hand" [*Id.* at 467]. Dr. Azbell opined that, during the course of an eight-hour workday, Plaintiff could sit for about two hours, stand for about two hours, walk for "possibly" two hours, and spend the remaining two hours lying down [*Id.*]. Dr. Azbell found that Plaintiff had no trouble "reaching either horizontally or overhead with the right hand and could do so probably frequently," but opined that she was limited to reaching infrequently with her left hand [*Id.*]. Dr. Azbell stated that Plaintiff could handle, finger, feel, push, and pull with either hand, "at least occasionally," and "could operate foot controls with the right foot possibly up to occasionally but not with the left" [*Id.*]. Dr.

18

Azbell further opined that Plaintiff could balance, stoop, kneel, crouch, and climb stairs and ramps infrequently, but could not climb ladders or scaffolds or work at unprotected heights or around moving mechanical parts [*Id.* at 467–68]. He opined that Plaintiff "should probably not operate [a] vehicle," could "perform activities like shopping only on a limited basis and [would] need a travel companion for assistance," could "walk a block at a reasonable pace" on an uneven or smooth surface, and could "climb only a very few steps at a reasonable pace with the use of a handrail" [*Id.* at 468]. Finally, Dr. Azbell opined that Plaintiff "is able to prepare meals, take care of hygiene, and is competent [to] take care of her finances" [*Id.*].

The ALJ considered Dr. Azbell's opinion but afforded it moderate weight [*Id.* at 87]. The ALJ explained that he discounted Dr. Azbell's opinion "due to internal inconsistencies and reliance on the subjective statements of the claimant" [*Id.*]. The ALJ also noted, however, that Dr. Azbell provided "a detailed assessment of his objective findings, which were somewhat consistent with the claimant's subjective complaints" [*Id.*].

In her brief, Plaintiff states that Dr. Azbell assessed disabling limitations, but she does not challenge the ALJ's analysis of his opinion. From the Court's review, the ALJ appropriately evaluated Dr. Azbell's opinion in light of the relevant statutory factors and explained why he gave the opinion moderate weight. In particular, the ALJ focused on the factor of inconsistency and found that the opinion relied disproportionately on Plaintiff's subjective complaints [*Id.*]. Indeed, Dr. Azbell appeared to rely heavily on Plaintiff's representations that she experienced "significant pain" during testing [*Id.* at 466–67]. Although Dr. Azbell recorded generally normal findings in the right arm and shoulder, he nevertheless assessed a limitation of lifting only ten pounds occasionally with that arm and

19

carrying only five pounds [*Id.*]. Although Plaintiff did not use an assistive device for walking, Dr. Azbell opined that Plaintiff would require a "travel companion for assistance" when performing activities like shopping [*Id.* at 467–68]. The Court finds that substantial evidence in the record supports the ALJ's decision to assign Dr. Azbell's opinion only moderate weight.

### 4. Dr. Langford

Plaintiff saw Dr. Dee Langford, Ed.D., in November 2013, for a consultative psychological examination [*Id.* at 477–81]. Dr. Langford opined that Plaintiff fell into the average range of intellectual functioning but showed evidence of mild to moderate impairment in her short-term memory, moderate to marked impairment in her ability to sustain concentration, mild impairment in her long-term and remote memory functioning, and marked impairment in social relating and in her ability to adapt to change [*Id.* at 481]. After considering Dr. Langford's opinion, the ALJ assigned it moderate weight, explaining that the opinion "provided a detailed analysis with cogent observations," but that "it appeared to be more reliant upon the claimant's subjective complaints than on the treatment record and clinical observations" [*Id.* at 87].

From the Court's review, the ALJ appropriately evaluated Dr. Langford's opinion in light of the relevant statutory factors and explained why he gave the opinion moderate weight. The Regulations provide that, "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R § 416.927(c)(4). According to Dr. Langford, Plaintiff stated that she was asking for disability benefits due to back pain but mentioned no other medical issues [Tr. 477]. Additionally, although Plaintiff said she heard voices telling her to hurt someone, she did not actually appear

to experience any hallucinations or delusional thinking, and she showed no evidence of responding to internal stimuli [*Id.* at 479, 481]. As the ALJ noted, on examination, Plaintiff "demonstrated normal speech, thought processes, short-term memory, calculations, cognition, and ability to interact" [*Id.* at 83, 479–80]. Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's assessment of Dr. Langford's opinion.

### 5. Lack of Controlling Medical Opinion

Plaintiff argues that, because the ALJ did not give controlling weight to any one medical opinion, the ALJ "play[ed] doctor" and substituted his hunch or intuition in place of a doctor's opinion [Doc. 13 p. 17].

Plaintiff is mistaken as to the record and the controlling law on this issue. Although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 416.927(c), he is not bound to adopt any particular opinion, even that of a treating physician, when formulating a claimant's RFC. *See Rudd v. Comm'r Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996))). The Sixth Circuit has cautioned that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted); *see also Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir.

2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.").

Contrary to Plaintiff's position, however, the Sixth Circuit does not require that an ALJ base his RFC assessment on a medical opinion. *See Brown v. Comm'r Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("[N]either the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC."); *see also Rudd*, 531 F. App'x at 728. An ALJ is to determine a claimant's RFC assessment after considering *all* of the evidence in the record, including medical opinions, but also including the objective medical evidence, the claimant's testimony, and any other relevant evidence.

In this case, although the ALJ did not give controlling weight to any one doctor's opinion, he did not ignore the medical opinion evidence and, in fact, based the RFC determination on several of the medical opinions provided. The ALJ's RFC determination is consistent with the opinions of the non-examining state agency consultants, Dr. Rudoph Titanji, Dr. Saul Juliao, Dr. Jenaan Khaleeli, Psy.D., and Dr. Jayne Dubois, Ph.D. [Tr. 93–105, 111–19, 143–51]. Furthermore, as discussed above, the ALJ partially relied on Dr. Moyer's opinion regarding Plaintiff's exertional limitations, and also considered and incorporated the consultative opinions offered by Drs. Langford and Azbell [*Id.* at 85–87, 465–68, 477–81, 503–05]. Finally, in addition to these medical opinions, the ALJ evaluated the medical evidence of record, Plaintiff's testimony and credibility, and Plaintiff's reports of daily activities [*Id.* at 83–87]. Substantial evidence in this case supports the ALJ's finding of no disability.

## III.    Conclusion

Accordingly, having carefully reviewed the entire administrative record and the parties' briefs filed in support of their respective motions, the Court concludes that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision.  With such support, the Court finds that the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion.  *See, e.g.*, *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

Thus, the Court will hereby **DENY** Plaintiff's Motion for Judgment on the Pleadings [Doc. 12], **GRANT** the Commissioner's Motion for Summary Judgment [Doc. 14], and **AFFIRM** the Commissioner's decision.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

23